**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CISSY THOMPSON-LYONS, Plaintiff, v. COMMUNITY DENTAL OF HAMILTON, P.C., Defendant. | Civil Action No. 21-20671 (MAS) (TJB) **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Community Dental of Hamilton, P.C.'s ("Community Dental") Partial Motion to Dismiss. (ECF No. 6.) Plaintiff Cissy Thompson-Lyons ("Thompson-Lyons") opposed, and Community Dental replied. (ECF Nos. 8, 9.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Community Dental's Motion.

**I.   BACKGROUND**

This is a case about alleged racial discrimination by a supervisor and the fallout that followed. Community Dental, a dental office located in Hamilton Township, New Jersey, hired Thompson-Lyons as a part-time dental assistant in May 2019. (Compl. ¶¶ 10, 12, ECF No. 1.) Thompson-Lyons earned about $14 an hour and worked part-time for the first several months of her employment. (*Id.* ¶¶ 12, 14.) Due to Thompson-Lyons's success at work, sometime later, Community Dental began routinely scheduling Thompson-Lyons to work full-time hours and then granted her a "merit-based pay raise to $15.00 per hour" in October 2019. (*Id.* ¶¶ 14, 15.)

Things took a turn in November 2019, however. Silvia Cruz ("Cruz"), a manager at Community Dental, allegedly approached Thompson-Lyons in November 2019 to tell Thompson-Lyons that "[her] hair is so unprofessional." (*Id.* ¶ 17.) Thompson-Lyons maintained her hair "in an 'afro' style, commonly worn by African-American women." (*Id.* ¶ 18.) In response to this comment, Thompson-Lyons asked Cruz whether "[her] natural hair is unprofessional to [Cruz]," to which Cruz responded, "Yes, didn't they teach you that at school? Every office has a set of rules, and those are [Community Dental's] rules. You can wear your hair gelled down or straight." (*Id.* ¶ 17.) Thompson-Lyons did not respond. (*Id.*)

Understandably upset, Thompson-Lyons reported the incident to the district manager at Community Dental, Joseph Potena ("Potena"). (*Id.* ¶ 19.) When Thompson-Lyons met with Potena the next day, Potena stated that Community Dental does not discriminate and Thompson-Lyons may "wear [her] hair how [she] want[s]." (*Id.* ¶ 20.) A day or so after this meeting, Community Dental substantially cut Thomson-Lyons's hours, as she went from a forty-hour week to working only fourteen hours a week. (*Id.* ¶ 23.) Thompson-Lyons did not complain about her reduction in hours out of fear of further retaliation. (*Id.* ¶ 24.)

The story does not end there. In January 2020, Thompson-Lyons again raised the November 2019 incident up the chain of command, and Community Dental opened an internal investigation after a series of meetings between Thompson-Lyons and various managers. (*Id.* ¶¶ 26, 28, 29.) But Community Dental closed the investigation shortly after conducting witness interviews. (*Id.* ¶ 29.) Frustrated and now working only fourteen hours a week, Thompson-Lyons quit in late January 2020. (*Id.* ¶¶ 26, 32.) Partially motivating Thompson-Lyons's decision to leave was the "economic brunt of her new [limited] schedule." (*Id.* ¶ 25.)

Thompson-Lyons later sued Community Dental, alleging five claims: (1) racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), (2) retaliation under Title VII, (3) violations of 42 U.S.C. § 1981, (4) discrimination under the New Jersey Law Against Discrimination ("NJLAD"), and (5) retaliation under NJLAD. Community Dental moved for a narrow, partial dismissal of Thompson-Lyons's Complaint, contending that she failed to state a claim for relief on her constructive discharge claim. (ECF No. 6.) Thompson-Lyons opposed (ECF No. 8), and Community Dental replied (ECF No. 9).

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556

---

[1] Hereafter all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION[2]

Community Dental moves to dismiss the legal theory of constructive discharge as to all counts in the Complaint. (ECF No. 6.) Constructive discharge, as the Court understands Thompson-Lyons's Complaint, operates as an alternative theory to satisfy the element of an adverse employment action.[3] *E.g.*, *Nuness v. Simon & Schuster, Inc.*, 325 F. Supp. 3d 535, 562 (D.N.J. 2018) ("Pursuant to the NJLAD, '[r]etaliatory action' is 'the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee . . . . Certainly, a constructive discharge, if it occurred, constitutes an adverse employment action." (quoting, among others, *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 445 (3d Cir. 2011))); *Clegg v. Falcon Plastics, Inc.*, 174 F. App'x 18, 27 (3d Cir. 2006) (finding that under Title VII, "[a] constructive discharge can count as an adverse employment action for retaliation purposes"); *Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 649 (E.D. Pa. 2021) (adverse employment action is an element of Title VII race discrimination claim). According to Community

---

[2] The Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in favor of the nonmoving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[3] Constructive discharge is also pled in the Complaint as part of damages and has implications for recovery. (Compl. ¶ 51; *see also Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004) (noting that for a Title VII claim, "constructive discharge is functionally the same as an actual termination in damages-enhancing respects.").)

Dental, Thompson-Lyons failed to adequately plead a theory of constructive discharge predicated on the facts leading up to her resignation. (*See generally* Def.'s Moving Br., ECF No. 6-1.) Those facts include Thompson-Lyons's rollercoaster ride from part-time employment to full-time employment and back to part-time employment in the wake of her racial discrimination complaint. (*Id.* at 8 (citing Compl. ¶¶ 13, 23, 30-32).) That is, Community Dental agrees that at this stage it must accept as true Thompson-Lyons's allegations that (1) her supervisor made a racially insensitive comment about her hair, (2) she reported this comment up the chain at Community Dental and just two days later was reduced from working roughly forty hours a week to fourteen hours a week, and (3) Community Dental's internal investigation into the incident was closed without further action. (*Id.* at 8-9.) Nonetheless, Community Dental moves the Court to dismiss all theories of constructive discharge in Thompson-Lyons's Complaint, arguing that she "fall[s] far short" of adequately alleging the necessary elements. (*Id.* at 9.)

Although Thompson-Lyons raises claims of constructive discharge under federal law (Title VII and 42 U.S.C. § 1981) and state law (NJLAD), courts analyze them the same. *Behrens v. Rutgers Univ.*, No. 94-358, 1996 WL 570989, at *4 (D.N.J. Mar. 29, 1996) (noting that the elements of constructive discharge are the same under federal and New Jersey law); *EEOC v. Blue Diamond Growers Ass'n*, No. 90-2281, 1992 WL 16326, at *12 (D.N.J. Jan. 28, 1992) (holding that the analysis of constructive discharge is the same under NJLAD and Title VII), *aff'd*, 980 F.2d 722 (3d Cir. 1992). For this motion, the Court considers all Thompson-Lyons's claims of constructive discharge together.

"To find constructive discharge, [courts] 'need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Clegg*, 174 F. App'x at 27 (quoting *Goss v. Exxon Office Sys. Co.*,

747 F.2d 885, 888 (3d Cir. 1984)). Intolerable conditions are those that are "so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971 (3d Cir. 1998)). An alteration in job responsibilities can rise to the level of constructive discharge. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993) (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992); *Goss*, 747 F.2d at 888-89). The test is objective. *Duffy*, 265 F.3d at 167. Courts look to several non-exhaustive factors in the constructive discharge context, including "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Philadelphia*, 394 F. App'x 935, 939 (3d Cir. 2010).

At this early stage, the Court finds dismissal unwarranted. For one, "[c]laims of constructive discharge are highly fact-specific and depend upon the particular circumstances and evidence of each case," making this claim "unsuitable for judgment on the pleadings." *Lebofsky v. City of Philadelphia*, 2007 WL 1217874, at *4 (E.D. Pa. Apr. 24, 2007); *Levendos v. Stern Ent., Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1988) ("[C]onstructive discharge is a heavily fact-driven determination." (internal quotation marks omitted)). Because of this, it is often "inappropriate for the [d]istrict [c]ourt to decide that fact-intensive question in the context of a 12(b)(6) motion." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.7 (3d Cir. 2006); *Niehoff v. SPS Techs., Inc.*, No. 16-3301, 2016 WL 6648618, at *5 (E.D. Pa. Nov. 10, 2016) ("It is not appropriate for the court to delve into such a 'fact-intensive question' [of constructive discharge] on a motion to dismiss under Rule 12(b)(6)"); *Muench v. Twp. of Haddon*, 605 A.2d 242, 249 (N.J. Sup. Ct. App. Div. 1992)

(reversing the trial court's dismissal of a constructive discharge case because it was fact-specific whether a reasonable person would resign under the circumstances).

To be sure, Thompson-Lyons meets the low pleading bar at this stage. She alleges that a supervisor made a racially insensitive remark to her, sparking her decision to report it upward. (Compl. ¶¶ 17, 19.) That reporting went nowhere, and she further alleges that just days after raising the incident her hours were dramatically reduced until she resigned. (*Id.* ¶¶ 23, 30, 31.) Specifically, Thompson-Lyons's weekly earnings were cut by nearly two-thirds. (Compl. ¶¶ 15, 23 (alleging reduction from forty to fourteen hours a week).) At this stage, the Court cannot conclude that, as a matter of law, a reasonable person would not have found it necessary to resign. *Khalifeh v. Duff & Phelps Corp.*, No. 16-4572, 2017 WL 1003220, at *7 (D.N.J. Mar. 15, 2017). Nor is the Court convinced by Community Dental's argument that because Thompson-Lyons was hired as a part-time employee, her reduction in hours cannot form the basis of a constructive discharge claim. (Def.'s Moving Br. 8.) Such a legal position would steamroll the fact-finding process, ignoring the reality that Thompson-Lyons may have been informally promoted to a full-time employee even if her job title never changed. This is a particular concern here, because "[constructive discharge] claims often include evidence of subtle coercion, demotions, and changes in job responsibilities." *Lebofsky*, 2007 WL 1217874, at *4. Thus, Community Dental's Motion is denied. *Diallo v. Commonwealth Support Servs.*, No. 18-1517, 2019 WL 95918, at *4 (E.D. Pa. Jan. 3, 2019) (constructive discharge is inappropriate on a Rule 12(b)(6) motion).

IV.   **CONCLUSION**

Considering all facts in a light most favorable to Thompson-Lyons, the Court denies Community Dental's Motion. An Order consistent with this Memorandum Opinion will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE